UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARTIN UKEJE,                                        :

                Plaintiff,                :          10 Civ. 8389 (AJP)

        -against-                        :          **OPINION AND ORDER**

NEW YORK CITY HEALTH AND HOSPITALS        :
CORPORATION,
                              :

              Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Martin Ukeje, a fifty-three year old African American man, brings this action against defendant New York City Health and Hospitals Corporation ("HHC") alleging violations of 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (Dkt. No. 1: Compl. ¶¶ 1, 20-49.) Ukeje asserts that HHC unlawfully fired him in retaliation for his complaints of discrimination. (Compl. ¶¶ 25-29, 35-39, 45-49.)[1]

        Presently before the Court is HHC's summary judgment motion. (Dkt. No. 13: Notice of Motion.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 11.) For the reasons set forth below, HHC's summary judgment

---

[1] Ukeje's complaint also asserted that HHC unlawfully discriminated against him on the basis of his race/color with regard to his salary. (Compl. ¶¶ 20-24, 30-34, 40-44.) Following discovery, Ukeje no longer seeks to pursue the discrimination causes of action. (Dkt. No. 21: Ukeje Opp. Br. at 2 n.1.) Accordingly, those claims are dismissed with prejudice.

motion is GRANTED as to Ukeje's Section 1983 claim and his discrimination claims, and Ukeje's

state-law retaliation claims are DISMISSED without prejudice under the United Mine Workers v.

Gibbs doctrine.

## FACTS

On May 19, 2008, Ukeje started working for HHC at Gouverneur Hospital as a

probationary Associate Respiratory Therapist, Level II.  (Dkt. No. 14: HHC Rule 56.1 Stmt. ¶ 4;

Dkt. No. 1: Compl. ¶ 6; Dkt. No. 15: Khandakar Aff. Ex. B: Personnel Action Form; Dkt. No. 24:

Ukeje Rule 56.1 Stmt. ¶ 4.)   Ukeje was a recent graduate of Molloy College, with four months

experience as a Respiratory Therapist at Beth Israel Medical Center, where his annual salary was

$58,000.   (HHC & Ukeje Rule 56.1 Stmts. ¶ 8; Khandakar Aff. Ex. E: Ukeje Resume &

Application.)   Bruce Higgins, HHC's Associate Director of Specialty Services at Gouverneur

Hospital, interviewed and selected Ukeje for the position.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 5;

Khandakar Aff. Ex. D: Record of Interview; Dkt. No. 16: Higgins Aff. ¶¶ 1, 2, 4, 7.)   Higgins

recommended Ukeje's starting salary based on the Collective Bargaining Agreement ("CBA")

between HHC and Ukeje's union, DC37.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 6; Higgins Aff. ¶¶ 4,

8, 10; see Higgins Aff. Ex. A: CBA.)  The CBA contained a salary range for Associate Respiratory

Therapists, with differences in salary based on several factors including years of experience and

employment with HHC and whether the employee has a registered license.  (HHC & Ukeje Rule

56.1 Stmts. ¶ 7; Higgins Aff. ¶ 8.)  Ukeje's starting annual salary was $68,000 plus a pro-rated

annual amount of $2,347 for having a registered license in Respiratory Therapy.  (HHC & Ukeje

3

Rule 56.1 Stmts. ¶ 9; Khandakar Aff. Ex. B: Personnel Action Form; Khandakar Aff. Ex. P: Ukeje

HHC Job History.)

**Alleged Discriminatory Conduct and Events Leading to Ukeje's Termination**

In March or April 2009, Ukeje discovered that a co-worker in the same position, who

he believed had less seniority, was being paid $14,000 more per year.  (Dkt. No. 1: Compl. ¶ 7; Dkt.

No. 24: Ukeje Rule 56.1 Stmt. Ex. 1: Ukeje Dep. at 38-40.)  Ukeje alleges that he discovered his co-

worker's pay stub in open view in a folder to which he and others had access.  (Ukeje Dep. at 40-41;

Ukeje Rule 56.1 Stmt.¶ 38.)   On April 29, 2009, Ukeje emailed HHC Equal Employment

Opportunity Officer Lois Penn stating his "EEO concerns" and "suspicion that [his] colleague, who

has the same title, the same level, the same qualification and the same certification and state

registration and doing the same job and 4 years city service, is earning about $12000 or more higher

than [him] annually."  (Dkt. No. 14: HHC Rule 56.1 Stmt. ¶¶ 10-11; Compl. ¶ 8; Dkt. No. 15:

Khandakar Aff. Ex. F: 4/29/09 Ukeje Email to Penn; Dkt. No. 17: Penn Aff. ¶¶ 1, 4-5; Ukeje Dep.

at 44.)  Penn's response email asked Ukeje to call her to discuss the matter.  (HHC & Ukeje  Rule

56.1 Stmts. ¶ 12; Khandakar Aff. Ex. F: 4/29/09 Ukeje Email to Penn; Penn Aff. ¶ 6; Ukeje Dep.

at 44.)  Ukeje called Penn and scheduled a meeting.  (HHC & Ukeje  Rule 56.1 Stmts. ¶ 12; Penn

Aff. ¶ 6.)  Penn informed Ukeje to bring any relevant documentation to their meeting.  (HHC &

Ukeje Rule 56.1 Stmts. ¶ 12; Compl. ¶ 9; Penn Aff. ¶ 6; Ukeje Dep. at 44-45.)

On May 5, 2009, Ukeje met with Penn and expressed his concerns that a white co-

worker with the same title was being paid a higher salary.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 13;

Penn Aff. ¶ 7;  Ukeje Dep. at 44-45.)  Ukeje presented a copy of his co-worker's pay stub dated

4

March 20, 2009.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 14; Penn Aff. ¶ 8; Ukeje Dep. at 45-46.)  The

parties dispute the facts surrounding the remainder of this meeting.  (Ukeje Rule 56.1 Stmt. ¶¶ 14-

17.)

          Penn alleges that she asked Ukeje where he had obtained the pay stub, and he said

that he "took it from a 'folder' in his department and made a copy."  (HHC Rule 56.1 Stmt. ¶ 14;

Penn Aff. ¶ 8.)   According to Penn, Ukeje "admitted that he did not" have his co-worker's

permission to make the copy.  (HHC Rule 56.1 Stmt. ¶ 15; Penn Aff. ¶ 8.)  Penn asked Ukeje to wait

in her office while she went to speak with Labor Relations Specialist Arthur B. Simmons regarding

Ukeje's actions and to discuss what  action should be taken.  (HHC Rule 56.1 Stmt. ¶ 16; Penn Aff.

¶ 9;  Dkt: No. 18: Simmons Aff. ¶¶ 2, 5.)  According to HHC, when Simmons and Penn returned

to Penn's office and questioned Ukeje, he stated he had taken his co-worker's pay stub and made a

copy without permission.  (HHC Rule 56.1 Stmt. ¶ 17; Penn Aff. ¶ 10; Simmons Aff. ¶ 7; Ukeje

Dep. at 46.)  Simmons determined that disciplinary action should be taken and informed Ukeje that

he was suspended without pay, effective May 6, 2009.  (HHC & Ukeje Rule 56.1 Stmts. ¶¶ 18-19;

Compl. ¶ 10; Khandakar Aff. Ex. H: 5/05/09 Simmons Letter to Ukeje; Penn Aff. ¶ 10; Simmons

Aff. ¶¶ 8-9; Ukeje Dep. at 46.)  Simmons informed Ukeje that he would be served with a Notice of

Statement and Charges and that his union representative would be notified.  (HHC & Ukeje Rule

56.1 Stmts. ¶ 19; Khandakar Aff. Ex. H: 5/05/09 Simmons Letter to Ukeje; Simmons Aff. ¶ 9; Ukeje

Dep. at 46-47.)

          Ukeje alleges that he discovered the pay stub while completing his time sheet, which

was in the same folder as the pay stub.  (Compl. ¶ 9; Ukeje Dep. at 39-41.)  Ukeje alleges that Penn

never asked him where he obtained the pay stub and whether he had permission to make the copy, thus also denying that he admitted that he did not have permission to make the copy. (Ukeje Dep. at 46; Ukeje Rule 56.1 Stmt. ¶¶ 14-15, 41.)  Furthermore, Ukeje alleges that Simmons never questioned him, and he did not admit to Simmons that he took the pay stub and made a copy without permission.  (Ukeje Dep. at 46; Ukeje Rule 56.1 Stmt. ¶¶ 17, 41-42.)

On May 8, 2009, Ukeje was served disciplinary charges for Gross Misconduct and Misconduct.  (HHC & Ukeje Rule 56.1 Stmts. ¶¶ 20-21; Simmons Aff. ¶¶ 10-11 & Ex. C: Notice & Statement of Charges.)

> 1. Charge: Gross Misconduct
> Specification 1. That on or about March 19, 2009, you made a copy of your co-workers confidential information without authorization.
> Specification 2. That on or about May 5, 2009, you presented a copy of the above document to Human Resources regarding a salary inquiry.
> Specification 3. That on or about May 5, 2009, your actions were a serious violation of another employees confidentiality and interest for your personal gain.
> 2. Charge: Misconduct
> Specification: That an Employee shall not remove without proper authorization any property belonging to any patient or employee.

(HHC & Ukeje Rule 56.1 Stmts. ¶ 21; Simmons Aff. ¶¶ 10-11 & Ex. C: Notice & Statement of Charges.) Simmons subsequently determined that Ukeje was a probationary employee and amended Ukeje's disciplinary charges to add that the misconduct occurred during Ukeje's probationary period. (HHC & Ukeje Rule 56.1 Stmts. ¶ 23; Khandakar Aff. Ex. J: 5/13/09 Simmons Letter to Ukeje; Simmons Aff. ¶¶ 12-13.)

On May 19, 2009, Ukeje and his union representative attended an informal disciplinary conference presided over by Simmons.  (HHC & Ukeje Rule 56.1 Stmts. ¶¶ 24-25; Khandakar Aff. Ex. J: 5/13/09 Simmons Letter to Ukeje; Simmons Aff. ¶¶ 14-15; Ukeje Dep. at 47.)

Ukeje's supervisor Bruce Higgins also attended the conference and recommended that Ukeje be terminated.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 26; Higgins Aff. ¶¶ 22-23; Ukeje Dep. at 47.)  After the conference, Simmons determined that Ukeje was not entitled to disciplinary rights and could be terminated at any time during his probationary term under the HHC Personnel Rules and Regulations.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 27; Simmons Aff. ¶ 17.)  Simmons sent Ukeje a memorandum informing him that the Notice of Statement and Charges and conference were done in error and that he was terminated effective May 26, 2009.  (HHC & Ukeje Rule 56.1 Stmts. ¶¶ 28-29; Compl. ¶ 11; Khandakar Aff. Ex. K: 5/22/09 Simmons Memo to Ukeje; Simmons Aff. ¶ 18.)

At the time of Ukeje's termination, his salary was $73,549 plus an additional $2,347 for licensure.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 35; Khandakar Aff. Ex. P: Ukeje HHC Job History.)

**Respiratory Therapist Michael Leibowitz:  Qualifications and Experience**

Michael Leibowitz was hired by Gouverneur Hospital in February 2005 with an annual salary of $68,862.  (Dkt. No. 14: HHC Rule 56.1 Stmt. ¶ 32; Dkt. No. 15: Khandakar Aff. Ex. N: Leibowitz HHC Job History; Dkt. No. 24: Ukeje Rule 56.1 Stmt. ¶ 32.)  Previously, Leibowitz was employed at several HHC facilities, including King County Hospital Center as Director of the Department of Respiratory Care and Queens Hospital Center as Staff Therapist.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 33; Khandakar Aff. Ex. O: Leibowitz Resume & Application.)  Prior to his employment at Gouverneur Hospital in 2005, Leibowitz had more than ten years of experience as a Respiratory Therapist with HHC and over twenty-five years of experience as a Respiratory Therapist.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 34; Khandakar Aff. Ex. O: Leibowitz

Resume & Application.)  Leibowitz obtained his Respiratory Therapy license in 1975.  (HHC &

Ukeje Rule 56.1 Stmts. ¶ 34; Khandakar Aff. Ex. O: Leibowitz Resume & Application.)  At the time

of Ukeje's termination, Leibowitz's salary was $82,613 plus an additional $2,347 for licensure and

$2,989 for longevity.  (HHC & Ukeje Rule 56.1 Stmts. ¶ 36; Khandakar Aff. Ex. N: Leibowitz HHC

Job History.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576,

580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party

seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct.

1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may

discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g.,

Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See,

---

[2]    See also, e.g., Feingold v. N.Y., 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

9

e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v.

U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).

To evaluate a fact's materiality, the substantive law determines which facts are critical and which

facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

While "disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or

unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g.,

Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

**A.     Additional Summary Judgment Standards in Employment Discrimination/
Retaliation Cases**

When a case turns on the intent of one party, as employment discrimination and

retaliation claims often do, a "trial court must be cautious about granting summary judgment." Gallo

v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[3/]  Because the

employer rarely leaves direct evidence of its discriminatory or retaliatory intent, the Court must

carefully comb the available evidence in search of circumstantial proof to undercut the employer's

explanations for its actions.  E.g., Gallo v. Prudential Residential Srvs., Ltd. P'ship, 22 F.3d at 1224.

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will

---

[3/]     Accord, e.g., Feingold v. N.Y., 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156
F.3d 396, 400 (2d Cir. 1998) ("[I]n an employment discrimination case when, as here, the
employer's intent is at issue, the trial court must be especially cautious about granting
summary judgment.");  McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)
("[C]aution must be exercised in granting summary judgment where motive is genuinely in
issue.");  Cardoza v. Healthfirst, Inc., 210 F. Supp. 2d 224, 227 (S.D.N.Y. 1999); see also,
e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination or retaliation, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer.  E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

        In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trs. of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.  To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." (quotations & alterations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely

than not [discrimination] was the real reason for the discharge'").[4/]  Indeed, the Second Circuit "went

out of [its] way to remind district courts that the 'impression that summary judgment is unavailable

to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d

at 41.

## II.   HHC IS ENTITLED TO SUMMARY JUDGMENT ON UKEJE'S SECTION 1983 CLAIM BECAUSE HE HAS FAILED TO SHOW THE EXISTENCE OF A MUNICIPAL POLICY OR PRACTICE

### A.   Legal Standards Governing Section 1983 Claims

To state a claim under Section 1983, a plaintiff must allege the violation of a right

secured by the Constitution or laws of the United States by a person acting under color of state law.

42 U.S.C. § 1983; see, e.g., West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988);

Kamholtz v. Yates Cnty., 350 F. App'x 589, 591 (2d Cir. 2009); Feingold v. N.Y., 366 F.3d 138, 159

(2d Cir. 2004); Ruggiero v. Krzeminski, 928 F.2d 558, 562-63 (2d Cir. 1991); Rojas v. Alexander's

Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990), cert. denied, 502 U.S. 809, 112 S. Ct. 52

(1991).[5/]  "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure

for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519

---

[4/]   See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652 (2d Cir. 1997).

[5/]   See also, e.g., White v. Dep't of Corr. Servs., --- F. Supp. 2d ----, 2011 WL 4527320 at *11 (S.D.N.Y. Sept. 30, 2011); Djonbalic v. City of N.Y., 99 Civ. 11398, 2000 WL 1146631 at *4 (S.D.N.Y. Aug. 14, 2000) (Peck, M.J.); Carbonell v. Goord, 99 Civ. 3208, 2000 WL 760751 at *5 & n.12 (S.D.N.Y. June 13, 2000) (Peck, M.J.) (& cases cited therein); Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *4 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Sprint Spectrum L.P. v. Mills, 65 F. Supp. 2d 161, 163 (S.D.N.Y. 1999); McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 696 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.).

(2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994); Carbonell v. Goord, 2000 WL 760751 at *5.[6]

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior.  E.g., Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir.1998); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991).[7]  Rather, in order to hold a municipality liable under Section 1983 for the unconstitutional acts of its employees, the

---

[6]     Accord, e.g., Gill v. DeFrank, 98 Civ. 7851, 2000 WL 270854 at *5 (S.D.N.Y. Mar. 9, 2000) (Peck, M.J.), report & rec. adopted in relevant part, 2000 WL 897152 (S.D.N.Y. July 6, 2000) (Buchwald, D.J.), aff'd, 8 F. App'x 35 (2d Cir. 2001); Ali v. Szabo, 81 F. Supp. 2d 447, 453 (S.D.N.Y. 2000) (Pauley, D.J. & Peck, M.J.); Jackson v. Johnson, 15 F. Supp. 2d 341, 355-56 (S.D.N.Y. 1998) (Kaplan, D.J. & Peck, M.J.); Silva v. Sanford, 91 Civ. 1776, 1998 WL 205326 at *8 (S.D.N.Y. Apr. 24, 1998) (Peck, M.J.); Williams v. Keane, 95 Civ. 0379, 1997 WL 527677 at *3 (S.D.N.Y. Aug. 25, 1997) (Peck, M.J.); Ruiz v. Selsky, 96 Civ. 2003, 1997 WL 137448 at *4 (S.D.N.Y. Mar. 24,1997) (Peck, M.J.); Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995) (Sotomayor, D.J. & Peck, M.J.).

[7]     See also, e.g., Justin R. ex rel. O'Toole v. Bloise, 06 Civ. 6228, 2011 WL 4684359 at *9 (S.D.N.Y. Oct. 5, 2011); Aggarwal v. N.Y.C. Health & Hosps. Corp., 98 Civ. 5063, 2000 WL 172787 at *7 (S.D.N.Y. Feb. 10, 2000) ("A municipal corporation, such as HHC, may not be held liable under a respondeat superior theory . . . ."); Greenfield v. City of N.Y., 2000 WL 124992 at *8; McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d at 703-04; Palmer v. City of Yonkers, 22 F. Supp. 2d 283, 290 (S.D.N.Y. 1998); Smith v. Montefiore Med. Ctr., 22 F. Supp. 2d 275, 282-83 (S.D.N.Y. 1998); Brodeur v. City of N.Y., 96 Civ. 9421, 1998 WL 557599 at *8-9 (S.D.N.Y. Sept. 2, 1998); Covington v. City of N.Y., 94 Civ. 4234, 1998 WL 226183 at *3 (S.D.N.Y. May 4, 1998); Johnson v. Rikers Island Hosp., 95 Civ. 10778, 1998 WL 91078 at *4 (S.D.N.Y. Mar. 3, 1998); King v. Dep't of Corr., 95 Civ. 3057, 1998 WL 67669 at *3 (S.D.N.Y. Feb.18, 1998); Roman v. Morace, 97 Civ. 0341, 1997 WL 777844 at *9 (S.D.N.Y. Dec.16, 1997); Woo v. City of N.Y., 93 Civ. 7007, 1996 WL 457337 at *4 (S.D.N.Y. Aug. 14, 1996) (Peck, M.J.) (and cases cited therein).

plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy.  See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).[8/]  The plaintiff need not identify an explicit, official policy or practice.  See, e.g., Patterson v. Cnty. of Oneida, 375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992).  It is sufficient to show a widespread pattern of behavior that constitutes "'a custom or usage with the force of law'" or "'the constructive acquiescence of senior policy-making officials.'"  Patterson v. Cnty. of Oneida, 375 F.3d at 226; see, e.g., Belpasso v. City of N.Y., 07 Civ. 3627, 2008 WL 2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v. Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9 (S.D.N.Y. June 22, 2007); Collins v. Stasiuk, 56 F. Supp. 2d 344, 345 (S.D.N.Y. 1999) ("The decision to fire one man, for whatever reason, is neither a course or method of action . . . . It is a singular act, applicable to one individual . . . .  It is hard to imagine any decision that falls farther outside the common understanding of the word 'policy'.").  "A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate

---

[8/]     See also, e.g., Gorokhovsky v. City of N.Y., 10 Civ. 8848, 2011 WL 2019423 at *10 (S.D.N.Y. May 19, 2011); Aggarwal v. N.Y.C. Health & Hosps. Corp., 2000 WL 172787 at *7 ("A municipal corporation, such as HHC, . . . may be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"); Greenfield v. City of N.Y., 2000 WL 124992 at *8; McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d at 704; Gonzalez v. City of N.Y., 97 Civ. 2246, 1998 WL 382055 at *2 (S.D.N.Y. July 9, 1998); Muniz v. N.Y., 96 Civ. 5931, 1997 WL 576033 at *2 (S.D.N.Y. Sept. 15, 1997);  Palacios v. Corr. Officer John Doe, 95 Civ. 6855, 1997 WL 458816 at *1 (S.D.N.Y. Aug. 12, 1997); Woo v. City of N.Y., 1996 WL 457337 at *4; Covington v. City of N.Y., 916 F. Supp. 282, 288 (S.D.N.Y. 1996) (Peck, M.J.).

indifference to the constitutional rights of those within its jurisdiction.'"  Patterson v. Cnty. of Oneida, 375 F.3d at 226.

Any analysis of an allegation of municipal liability under Section 1983 begins with "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).[9/]

## B.    Ukeje Has Failed To Show The Existence Of A Municipal Policy or Practice

Ukeje alleges that HHC "maintains a policy of paying its Respiratory Therapists, including Plaintiff, in a discriminatory fashion unrelated to any legitimate, job-related variable" (Dkt. No. 1: Compl. ¶ 14) and that HHC retaliated against him "through its policy of terminating employees for opposing discrimination" (Compl. ¶ 27).  Ukeje, however, has not presented any evidence from which to infer the existence of such municipal policies or practices.  During Ukeje's deposition, he was questioned about his allegation that HHC maintained a policy of paying its respiratory therapists in a discriminatory fashion.  (Dkt. No. 24: Ukeje Rule 56.1 Stmt. Ex. 1: Ukeje Dep. at 49-51.)  To support this allegation Ukeje testified, "[t]wo persons, same title, doing the same job and there is a disparity."  (Ukeje Dep. at 50.)  Ukeje further testified that he did not know of

---

[9/]    Accord, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 123, 112 S. Ct. 1061, 1067 (1992); Greenfield v. City of N.Y., 2000 WL 124992 at *8; Watkins v. City of Buffalo, No. 95-CV-0816, 1999 WL 1068239 at *5 (W.D.N.Y. Nov. 12, 1999); McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d at 704 (citing cases); Sundbye v. Ogunleye, 3 F. Supp. 2d 254, 266 (E.D.N.Y. 1998); Graham v. Fries, No. 93-CV-3371, 1996 WL 1057212 at *9 (E.D.N.Y. Oct. 16, 1996); see also City of Okla. City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.").

anyone else who was discriminated against under this "policy."  (Ukeje Dep. at 50-51.)  Ukeje's counsel acknowledged that a "municipal defendant may only be held liable under section 1983 if the alleged violation resulted from an official policy, custom or practice" (Dkt. No. 21: Ukeje Opp. Br. at 5, citations omitted), but he does not provide any evidence to meet or arguments to support this burden.  Counsel simply quotes to City of Okla. City v. Tuttle, 471 U.S. 808, 830 n.5, 105 S. Ct. 2427, 2440 n.5 (1985):  "'Some officials . . . may occupy sufficiently high policymaking roles that any action they take under color of state law will be deemed official policy.'"  (Ukeje Opp. Br. at 5, quoting City of Okla. City v. Tuttle.)  While the factual dispute as to what Ukeje told HHC and why it fired him might well prevent summary judgment if there were a retaliation claim analyzed under Title VII's burden shifting analysis, Ukeje has not established evidence of any policy, and so his Section 1983 retaliation claim fails.  (See also Dkt. No. 25: HHC Reply Br. at 4.)

Since plaintiff Ukeje has not shown evidence of any municipal policy or practice, HHC's summary judgment motion as to plaintiff's Section 1983 retaliation claim is **GRANTED**.

## III.   UKEJE'S REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED WITHOUT PREJUDICE UNDER THE UNITED MINE WORKERS V. GIBBS DOCTRINE

Ukeje's remaining causes of action, i.e., his claim for retaliation under the NYSHRL (Dkt. No. 1: Compl. ¶¶ 1, 35-39) and NYCHRL (Compl. ¶¶ 1, 45-49), are state law claims.  Since the parties have not alleged diversity jurisdiction and Ukeje's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over Ukeje's remaining state law claims.  See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7, 108 S. Ct. 614, 619 & n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance

of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008); Quinones v. Mamis-King, 155 F. App'x 547, 548 (2d Cir. 2005); Gelb v. Bd. of Elections of City of N.Y., 155 F. App'x 12, 15 (2d Cir. 2005), cert. denied, 547 U.S. 1129, 126 S. Ct. 2030 (2006); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004), cert. denied, 544 U.S. 1044, 125 S. Ct. 2270 (2005); Lanza v. Merrill Lynch & Co. (In re Merrill Lynch Ltd. P'ships Litig.), 154 F.3d 56, 61 (2d Cir. 1998); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994). Thus, Ukeje's state-law retaliation claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, HHC's summary judgment motion (Dkt. No. 13) is GRANTED in part and Ukeje's Section 1983 claim and his state and federal discrimination claims are DISMISSED with prejudice.   Ukeje's NYSHRL and NYCHRL retaliation claims are DISMISSED without prejudice under the United Mine Workers v. Gibbs doctrine. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:     New York, New York
           November 4, 2011

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:     David Christopher Wims, Esq.
                          Shakera Khandakar, Esq.